## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| **STL 300 N.4th LLC, and** ) | |
| **STL 400 N.4th LLC,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Case No. 4:05CV00098MLM** |
| ) | |
| **VALUE ST. LOUIS ASSOCIATES, L.P.,** ) | |
| **and INTEGRITY REAL ESTATE CORP.,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court pursuant to the Motion for Summary Judgment filed by Defendants Value St. Louis Associates, L.P., and Integrity Real Estate Corp. (jointly "Defendants" or "Tenants"). Doc. 18. Plaintiffs STL 300 N.4th LLC and STL 400 N.4th LLC (jointly "Plaintiffs"or "Landlords") have filed a Response. Doc. 22. Defendants have filed a Reply. Doc. 24. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 c. Doc. 6.

### BACKGROUND and UNDISPUTED FACTS[1]

Plaintiff STL 300 N. 4th LLC (the "Mansion House Landlord") is the owner of certain land located at 300 N. 4th Street, St. Louis, Missouri. Plaintiff STL 400 N.LLC (the "Gentry's Landing Landlord") is the owner of the land located at 400 N. 4th Street, St. Louis, Missouri. On April 21, 1964, the predecessor in title to the Mansion House Landlord and the predecessor in title to Defendant Value St. Louis Associates, L.P., (the "Mansion House Tenant") entered into a lease of

---

[1]     The facts are undisputed unless otherwise stated.

Dockets.Justia.com

the land located at 300 N. 4th Street. The Mansion House Landlord and the Mansion House Tenant are the present landlord and tenant, respectively, under the Mansion House Lease.

On April 21, 1964, the predecessor in title to the Gentry's Landing Landlord and the predecessor in title to Defendant Integrity Real Estate Corporation (the "Gentry's Landing Tenant") entered into a lease of the land located at 400 N.4th Street. The Gentry's Landing Landlord and the Gentry's Landing Tenant are the present landlord and tenant, respectively, under the Gentry's Landing Lease.

The Mansion House Lease and the Gentry's Landing Lease (sometimes referred to collectively as the "Leases" or separately as "each Lease") each run for a period of seventy-six years commencing on April 21, 1964, and terminating on April 20, 2040. At the time the parties entered into the Leases there were no buildings on the land. Other than the legal description of the land and the rent amount, the provisions of the Leases are substantially the same. The description in each Lease states that the Tenant "does hereby take and rent, *upon and subject to the conditions* hereinafter expressed, the *real property bounded and described* as follows" in the Lease. Def. Ex. A (emphasis added). Each Lease then describes the property rented in metes and bounds and then states "including all other easements appurtenant to the above property." Next follows, "Subject to" specifically named easements including those of the sewer district, the electric company, a highway easement, and a building line agreement. Each Lease next states as follows:

> TOGETHER WITH all of the right, title and interest, if any, of the Landlord, of, in and to the beds of the streets, roads and avenues in front of and adjoining the above described premises; but subject, however, to all applicable building and zoning restrictions, regulations, resolutions and ordinances, as the same may affect the demised premises; subject to easements created or to be created in favor or the applicable governmental authorities or jurisdiction and the public utility companies for the installation of sewer lines, water mains, fire hydrants, gas, electric and telephone

2

and other service over, under and through the streets named above *also subject to the Lessee's fee interest in* and to the buildings to be erected upon the premises above described, *which they here by retain*."

Def. Ex. A at 2 (emphasized words are handwritten and initialed by the signatories).

Both Leases then address authority of the Tenants to obtain loans, conditions applicable to any mortgage obtained by the Tenants, and the tax obligation of the Landlords. Significantly, the Leases then state at the end of the introductory language that the "above described premises are hereinafter referred to as the 'demised premises.'" Def. Ex. A at 3. Thus, the term "demised premises" is defined within the introductory language of the Leases.

Pursuant to Article I, Section 2 of each Lease, as amended, the net annual basic rent was set for the first forty years of the term of the Leases. For the remainder of the term of the Leases the net annual basic rent is to be calculated as "a sum equal to six percent of the then appraised value of the demised premises" and is to be calculated in the 40th, 52nd and 64th years of each Lease. Article I, Section 2(B) of each Lease also provides that the appraised value of the respective demised premises shall be determined by three qualified appraisers, with one appraiser appointed by the Landlord, one appointed by the Tenant, and one appointed by the appointed appraisers.

The Tenants contend that a disagreement currently exists between the Landlords and their appraiser and the Tenants and their appraiser with respect to the correct methodology to be employed in appraising the value of the demised premises pursuant to the Lease. Def. Facts, ¶ 12. The Landlords acknowledge that there is a disagreement but contend that the disagreement is as to the meaning of "demised premises" as used in the Leases, which is the interest to be appraised.[2] Pl. Resp.

---

[2]    The court notes that the distinction which each party makes in regard to the dispute between the parties is ultimately without difference for the purpose of the controversy which is before this court; the definition of "demised premises" is inextricably tied to the

3

Def. Facts, ¶ 12.  The Landlords assert that the interest to be appraised under Article I of the Leases

is a "hypothetical fee simple" in the Land and the Tenants assert that the interest to be appraised

under Article I of the Leases is a "leased fee interest" in the Land. Under the Landlords' view and that

of their appraiser, the interest to be appraised is the value of the land *without consideration of the*

*Leases* and under the Tenants' view and that of their appraiser the interest to be appraised is the value

of the land *subject to the Leases*.

Pursuant to the procedures set forth in the Leases, the Landlords and the Tenants each

appointed a qualified appraiser to determine the appraised value of the respective demised premises

in the 40th year of the respective Leases.

The Landlord's appraiser and the Tenants' appraiser jointly appointed a third appraiser, James

K. Tellatin, of Tellatin, Andreas, and Short, Inc.,  who was asked to render an appraisal based on both

the hypothetical fee simple interest and the leased fee interest in the Land.[3]   In a joint letter to

Appraiser Tellatin attorneys for the parties stated as follows:

> As discussed last week, [the appraiser appointed by the Landlords and the
> appraiser appointed by the Tenants] have agreed to your appointment as the third
> appraiser under the provisions of Article I, Section 2 of the Leases for purposes of
> valuing the demised premises as that term is used in the Leases.
> ...

---

methodology to be applied to the appraisal of the demised premises.

[3]    According to Addendum C to the Appraisal prepared by the Tenants' appraiser,
the definition of a Fee Simple Estate, as stated in the Dictionary of Real Estate Appraisal, 4th Ed.
(Chicago, 2002, Page 113), is "[a]bsolute ownership unencumbered by any other interest or
estate, subject only to the limitations imposed by the governmental powers of taxation, eminent
domain, police power, and escheat."  According to the same source at Page 161, the definition of
Leased Fee Interest is "[a]n ownership interest held by a landlord with the rights of use and
occupancy conveyed by lease to others.  The rights of the lessor (the leased fee owner) and the
lessee are specified by contract terms contained within the lease."

> A dispute exists among the parties as to the proper methodology for the appraisal, so the parties have agreed that you should provide an appraisal for each property employing both the methodology employed by [the appraisers appointed by the Landlords and the Tenants] in their respective appraisals. The parties have also agreed that the effective date of your appraisal should be April 20, 2004.

Doc. 24, Ex. A.

Appraiser Tellatin prepared separate appraisals for 300 N.4th Street and 400 N.4th Street. Doc. 23, Ex. 2, Ex. 3. Depending on whether the appraised value of the respective "demised premises" is based upon a "hypothetical fee simple interest," as espoused by the Plaintiff Landlords and the Landlords' appraiser, or a "leased fee interest," as espoused by the Defendant Tenants and the Tenants' appraiser, the net annual basic rent amount for each Lease will vary substantially. According to Appraiser Tellatin a leased fee value "is significantly less than the fee simple value" and "produces a rent that is less than the current rent." Doc. 23, Ex. 2 and Ex. 3 at 35. The parties agree that the issue before the court is whether the "demised premises" is subject to the Leases, as proposed by Defendants who are the Tenants or comprised of a "hypothetical fee simple interest" in the Land without consideration of the Leases, as proposed by Plaintiffs who are the Landlords.

## STANDARD FOR SUMMARY JUDGMENT

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a

5

reasonable jury could return a verdict for the nonmoving party.  Id.  See also  Fenny v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. Celotex, 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247.  The nonmoving party may not rest upon mere allegations or denials of his pleading.  Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in its favor.  Id. at 255; Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir. 1987).  The court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Id. at 252.  With these principles in mind, the court turns to an analysis of Defendants' motions.

## DISCUSSION

The parties agree that Missouri law governs the interpretation of the Leases in the matter under consideration.  Missouri law provides that:

> The interpretation of a contract is entirely a question of law, the cardinal rule of which is to ascertain the intention of the parties and give it effect. Sonoma Mgmt. Co. v. Boessen, 70 S.W.3d 475, 479 (Mo. App. W.D. 2002). This intention is solely determined by the contract itself unless an ambiguity is found within the contract. Id. "A contract is ambiguous only if its terms are reasonably open to more than one

6

meaning, or the meaning of the language used is uncertain." Id. (quoting Atlas Reserve Temps. v. Vanliner Ins. Co., 51 S.W.3d 83, 87 (Mo. App. W.D.2001)). Whether a contract is ambiguous is also a question of law. Yerington v. La-Z-Boy, Inc., 124 S.W.3d 517, 520 (Mo. App. S.D.2004).

Dorsch v. Family Med., Inc., 159 S.W.3d 424, 435 (Mo. Ct. App. 2005).

A contract should be read as a whole to determine the intention of the parties. Dunn Indus. Group v. City of Sugar Creek, 112 S.W.3d 421, 428 (Mo. 2003) (en banc). If possible, all terms of a contract must be given effect, even when a contract is partly printed and partly handwritten. Mews v. Charlie Chan Publ'g Co., 884 S.W.2d 109, 111 (Mo. Ct. App. 1994). If there are "irreconcilable conflict[s] between printed provisions and handwritten provisions [in a contract], the handwritten provisions prevail." Id. [4]

Additionally, under Missouri law where a contract is ambiguous and susceptible to more than one construction, the more probable construction should be utilized. Rathbun v. The CATO Corp., 93 S.W.3d 771, 781 (Mo. Ct. App. 2002) (quoting Rouggly v. Whitman, 592 S.W.2d 516, 521 (Mo. Ct. App. 1979) ("The more probable and reasonable of two available constructions should be utilized to the exclusion of one which produces a 'redundant, illusory, absurd, and therefore unreasonable' result.").

While Tenants suggest that the definition of "demised premises" is not at issue, the definition of this term must be established in order to determine the manner by which the annual basic rent for the properties should be calculated. The court will, therefore, consider whether the Leases

---

[4]     The court notes that its role is to determine the intention of the parties to this matter upon signing the Leases and to do so by applying principals established under Missouri law. While each of the parties acknowledges that the Missouri law of contract interpretation is applicable to this matter, both parties cite case law of other jurisdictions to support their positions. The court notes that case law of other jurisdictions is not helpful to this court upon its application of Missouri law.

unambiguously establish what the demised premises include. As set forth above, the Leases describe the boundaries of the property to be leased in terms of metes and bounds. Following this description the Leases state the above quoted "subject to ... TOGETHER WITH" language with handwritten inclusions. According to Missouri law the handwritten inclusions in the Leases which reference the Lessees' fee interest in the buildings to be erected and which reference that the Lessee's retain such interest should be considered. Mews, 884 S.W.2d at 111. The court notes that there is no conflict between the handwritten reference to each Lease being subject to the Tenants' fee interest in the buildings to be erected on the land and the remainder of the Lease provisions. Contract Freighters, Inc. v. J.B. Hunt Transp., Inc., 245 F.3d 660, 663 (8th Cir. 2001) (holding that Missouri law provides that a contract should be enforced "as written and according to the plain meaning of the words ... when the contract is clear and unambiguous"). Indeed, the handwritten language makes it clear that the plain meaning of the language of the Leases establishes that the parties intended the demised premises to be subject to the lessees' fee interest in the buildings which by the very definition of a leased fee interest[5] means that any appraisal of the demised premises must be based on the Landlords' ownership interest in the land with the rights of use and occupancy conveyed by the Leases to the Tenants, the rights of each being specified in the Leases. Most significantly, following the metes and bounds description of the land and the "subject to .... TOGETHER WITH" language, the Leases state that the "above described premises are hereinafter referred to as the 'demised premises.'" Thus, the definition of the demised premises as stated within the introductory language of the Leases includes the legal description of the land, including all easements appurtenant to the land, subject to an easement agreement, and, by handwritten edit, is "also subject to the Lessee's fee interest in" and to

---

[5]     See Footnote 3.

8

the buildings to be erected on the premises. See Def. Facts, ¶ 10 (citing Doc. 18, Ex. A at 2). The court finds, therefore, that the clear and unambiguous language of the Leases establishes that the demised premises is the land subject to the Leases as suggested by Tenants and that, therefore, the interest to be appraised is a leased fee interest.

The Tenants cite Missouri Baptist Children's Home v. State Tax Commission of Missouri, 867 S.W.2d 510, 512 (Mo. 1993) (en banc), in support of their position that the interest to be appraised is a leased fee interest in the land, subject to the Leases. This case holds that when assessing the value of real property which is subject to a long-term lease, the effect of the long-term lease on the value of the property should be considered. The court stressed in Missouri Baptist that when assessing the value of such property, a realistic approach should be taken and that such an approach considers "economic conditions which cause property subject to long-term leases to have lower actual rentals than might be obtained if the property was unencumbered by the lease in the current market place. ... By contrast, consideration of potential rent hypothesizes an unrealistic market. ... Wholly excluding below-market long-term leases from the equation assumes facts that do not and are unlikely ever to exist." Id. at 512-13. The emphasis of the court in Missouri Baptist is that economic realities should not be ignored. Maryville Properties, L.P., v. Nelson, 83 S.W.3d 608, 613 (Mo. Ct. App. 2002) (citing Missouri Baptist, 867 S.W.2d at 513). It is significant, therefore, as noted by the Tenants' appraiser, "[a]s of the effective date of this appraisal, the underlying ground lease has a remaining term of 36 years. This impacts the ability to sell or to finance the leasehold interest." Def. Ex. C at 16. In the matter under consideration basing the rent of the demised premises on a leased fee interest in the land subject to the Leases takes into consideration economic realities. As such, the court finds that the Tenants' position is consistent with Missouri law as set forth in

9

<u>Missouri Baptist</u> and that the Landlords' position that hypothetical assumptions should be made is inconsistent with the court's holding in <u>Missouri Baptist</u>.

The Landlords argue that the Tenants' position creates a result which is not logical because at the very least the rental amount would not increase upon appraisal. The court notes, however, that the Leases address such a situation as they include a provision which states both a minimum and a maximum amount applicable to the increase in the net annual basic rent after the first forty years of the Leases. <u>See</u> Doc. 18, Ex. A, Amendment to the Lease ("[N]o increase in the net annual basic rental shall exceed twenty-five (25%) of the last previous annual rental, and such rental shall not be less than $209,034.12 or in the case of increases after the fortieth year, not less than the last preceding annual rental, whichever is higher."). Thus, the Leases provide that the rent would never be decreased below a certain level regardless of any decrease in the value of the demised premises.

It is significant that the methodology which the Tenants suggest is applicable to determining the appraised value of the demised premises takes into account the Landlords' reversionary interest. The failure to consider the fact that Landlords will receive a substantial windfall upon termination of the Leases by acquiring ownership of the all improvements including the buildings erected on the land by the Tenants would produce an inequitable and illogical result. As noted by the Tenants, "as the remaining term of the Leases become shorter with the passage of time" the reversionary interest of the Tenants will increase in value because "they will be closer to the point when they will acquire fee simple absolute ownership of the property and all the improvements thereon." Doc. 24 at 13. Thus, even assuming, arguendo, that the Leases are ambiguous, which they clearly are not, the court finds that the Tenants' position is the most rational and probable interpretation. <u>See</u> <u>Robson</u>, 391 S.W.2d at 861.

For the reasons more fully set forth above the court further finds that the language of the Leases provide that the demised premises includes the metes and bounds description of the land "subject to ... TOGETHER WITH" as set forth in the introductions and that, therefore, a leased fee interest is to be applied when determining the appraised value of the demised premises for purposes of computing the rent. The court notes that it is not its role to actually calculate the appraised value. As provided, however, by the Leases, the appraised value for the demised premises should be that established by Tenants' appraiser and as, alternatively, determined by Appraiser Tellatin pursuant to a leased fee interest assumption. As such, the court further finds that Defendants' Motion for Summary Judgment should be granted.

**CONCLUSION**

For the reasons more fully set forth above, the court finds that the undisputed facts establish that summary judgment should be granted in favor of Defendants.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**; [18]

**IT IS FURTHER ORDERED** that a separate Judgment shall issue this same date incorporating this Memorandum Opinion.

/s/ Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of February, 2006.

11